UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STEPHEN ALLEN HILL,

    Petitioner,

v.                                       Case No.: 5:23-cv-437-WFJ-PRL

SECRETARY, DEPARTMENT OF
CORRECTIONS AND ATTORNEY
GENERAL, STATE OF FLORIDA,

    Respondents.
_____/

## ORDER

Petitioner, a Florida prisoner, instituted this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). At the Court's direction, Respondents responded to Petitioner's petition and filed relevant portions of the state court record. (Doc. 7). Petitioner filed a reply in support of his petition. (Doc. 12). Thus, this matter is ripe for review.

The Court has reviewed the entire record. Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. *See* Rules Governing Section 2254 Case in the United States District Courts, Rule 8(a). Upon consideration, the Court concludes that the petition is due to be denied.

### I.    BACKGROUND

In May 2018, Petitioner was charged, by information, with aggravated battery of a law enforcement officer (Count 1); resisting a law enforcement officer with

violence (Count 2); and driving while license suspended or revoked (Count 3). (Doc. 7-1 at 13–14). The State also filed two separate notices: an intent to seek habitual offender status and that Petitioner qualified as a prison releasee reoffender. (Doc. 7-1 at 16, 18). In January 2019, he was charged by amended information with aggravated battery of a law enforcement officer (Count 1); aggravated assault of a law enforcement officer (Count 2); resisting a law enforcement officer with violence (Count 3); and driving while license suspended or revoked (Count 4). (Doc. 7-1 at 20–21).

On January 24, 2019, a jury convicted Petitioner on all four counts as charged. (Doc. 7-1 at 237, 239, 241, 243). On February 27, 2019, he was sentenced as a habitual offender to life imprisonment for Count 1, concurrent habitual offender sentences of 30 years for Count 2 and ten years for Count 3, and time served for Count 4. (Doc. 7-1 at 299). Petitioner appealed. (Doc. 7-1 at 301). On March 3, 2020, Florida's Fifth District Court of Appeal ("Fifth DCA") *per curiam* affirmed the judgment and sentence. (Doc. 7-1 at 393); *Hill v. State*, 291 So. 3d 958 (Fla. 5th DCA 2020). Mandate issued March 27, 2020. (Doc. 7-1 at 395). Petitioner's belated motion for rehearing was stricken as untimely. (Doc. 7-1 at 402).

On June 1, 2021, Petitioner moved, under Rule 3.800(a), Florida Rules of Criminal Procedure, to correct his sentence. (Doc. 7-1 at 404–08). He claimed the Prison Releasee Reoffender designations on Counts 1 and 2 were illegal. On July 13, 2021, the state court denied the motion. (Doc. 7-1 at 410–23). Petitioner did not appeal.

On July 12, 2021, Petitioner moved, under Rule 3.850, Fla. R. Crim. P., for postconviction relief. (Doc. 7-1 at 425–44). Petitioner raised three grounds, with four subgrounds, of ineffective assistance of counsel. The trial court summarily denied the motion. (Doc. 7-1 at 446–64). Petitioner appealed. (Doc. 7-1 at 466). On January 21, 2022, the Fifth DCA affirmed in part and reversed in part.[1] (Doc. 7-1 at 468–69). Following the remand, an evidentiary hearing was held on August 9, 2022. *See* Doc. 7-1 at 483–507. The postconviction court denied the claim at the hearing and entered a written order on August 17, 2022. (Doc. 7-1 at 509–12). Petitioner appealed. (Doc. 7-1 at 514). On May 23, 2023, the Fifth DCA *per curiam* affirmed. (Doc. 7-1 at 571). Mandate issued July 10, 2023. (Doc. 7-1 at 581).

Petitioner filed his petition for writ of habeas corpus in this Court on July 10, 2023. (Doc. 1). Respondents filed a response, arguing that the petition be denied in all respects. (Doc. 7). Petitioner filed a reply. (Doc. 12). Thus, the amended petition is ripe for review.

## II.   LEGAL STANDARDS

### A.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an

---

[1] In his final ground, Petitioner alleged that his trial counsel was ineffective in failing to object to the jury instruction on the use of non-deadly force, or alternately for failing to request a jury instruction on the use of deadly force. (Doc. 7-1 at 469). The Fifth DCA determined that the postconviction court's order did not address this ground, and the attached records did not refute the allegations. *Id*.

3

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a

4

factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

### B.   Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. A court must ask: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687–88. While engaging in this inquiry, a court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689–90. And where, as here, the court examines the performance of an experienced trial counsel, the presumption that his or her conduct was reasonable is even stronger. *See Fugate v. Head*, 261 F.3d 1206, 1216 (11th Cir. 2001). "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690; s*ee also Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the

5

> circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. Strickland encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III.   ANALYSIS

#### A.   Ground One

Petitioner states that trial counsel was ineffective and that the cumulative effect of counsel's errors denied him fair and impartial legal proceedings. (Doc. 1 at 4–7). Specifically, he claims counsel (a) failed to argue, during the motion for judgment of acquittal, that there was insufficient evidence to demonstrate that his truck was used in a manner likely to cause death or great bodily harm; (b) failed to object, request a mistrial, or request a curative instruction when the trial prosecutor invited the jury to rest its verdict on speculation; and (c) failed to object to opinion testimony elicited from the law enforcement victim as improper and inadmissible. To assess this claim, the Court applies the familiar and deferential *Strickland* test pursuant to the AEDPA.

The High Court has explained the difficulty a petitioner faces to meet his or her burden under § 2254 as amended by the AEDPA:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer [v.Andrade*, 538 U.S. 63,] 75, 123 S. Ct. 1166[, 155 L. Ed. 2d 144 (2003)].
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99. S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, 562 U.S. 86, 102−03 (2011).

Here, Petitioner must establish that the state courts' rulings on the claim he is presenting in federal court are so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *See id*. at 103. Because the Fifth DCA *per curiam* affirmed the collateral court's denial of this claim and subclaims, the Court must assess Ground One by "'look[ing] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *See Wilson v. Sellers,* 584 U.S. 122, 125 (2018).

In his postconviction motion, Petitioner raised the same three claims of ineffective assistance of counsel and the cumulative error claim. (Doc. 7-1 at 432–37). The postconviction court specifically addressed and rejected each claim:

### 1. Failure to argue insufficient evidence during judgment of acquittal

In Sub-claim A, the Defendant alleges his trial counsel was ineffective for failing to argue the judgment of acquittal for Count I. He claims trial counsel should have argued that the State had insufficient evidence to support that the "Defendant's pickup truck was actually used in a manner likely to cause death or great bodily harm." The Defendant contends trial counsel only argued that he did not "intentionally touch" the victim.

Under Florida Rule of Criminal Procedure 3.380 the Court or a party may seek a judgment of acquittal if "the evidence is insufficient to warrant a conviction." Previous versions of Rule 3.380 required the movant to "fully set forth specific grounds" and motion for judgment of acquittal may be inadequate if it does "not sufficiently set forth the grounds upon which relief was requested." *Spioch v. State*, 954 So. 2d 47 (Fla. 5th DCA 2007). In the current version, there is no standard on how that should be argued only requires an argument the evidence is insufficient to warrant a conviction. Generally, "courts should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974).

The Defendant was charged with aggravated battery of law enforcement officer under section 784.045(1)(a)2, Florida Statutes. *See attached* Amended Information. Section 784.045(1)(a)2, Florida Statutes (2018) states that, "[a] person commits aggravated battery who, in committing battery ... [ u ]ses a deadly weapon." The offense of battery occurs "when a person ... [a]ctually and intentionally touches or strikes another person against the will of the other; or ... [i]ntentionally causes bodily harm to another person."§ 784.03(1)(a), Fla. Stat. (2018) (emphasis added). A deadly weapon is defined as an "instrument that will likely cause death or great bodily harm when used in the ordinary and usual manner contemplated by its design." *Michaud v. State*, 47 So. 3d 374, 376 (Fla. 5th DCA 2010). A deadly weapon can also be "any instrument likely to cause great bodily harm because of the way it is used during the crime." *D.C. v. State*, 567 So. 2d 998 (Fla. 1st DCA 1990).

The State had to show that while committing the battery the Defendant used a deadly weapon. Trial counsel argued that the State failed to prove an element of the aggravated battery. *See attached* Trial Tr. 88:7-14. She argued that the State did no[t] prove that the Defendant "intentionally touched Deputy Miller with a deadly weapon." *Id*. A requirement of battery is that the person intentionally touch the victim.

8

> An automobile may qualify as a "deadly weapon," if used in the course of committing a crime. *See Jenkins v. State*, 747 So. 2d 997 (Fla. 5th DCA 1999). Trial counsel sought to refute the State's allegations by showing that the touching was not intentional. The trial counsel's argument challenges the sufficiency of the evidence thus, trial counsel was not ineffective in her arguments for judgment of acquittal.

(Doc. 7-1 at 448-49) (formatting omitted). Petitioner appealed and the Fifth DCA affirmed the denial of this ground. (Doc. 7-1 at 468–69).

### 2. Failure to object, request a mistrial, or request a curative instruction

> In the Defendant's Sub-claim B, he alleges trial counsel was ineffective for failing to object to misstatements by the State and seek a mistrial. He contends the State made statements during closing arguments that should have been objected. The Defendant argues the improper statement was: "if someone goes underneath the tires, what's going to happen to them? They might- they'll break bones. They could die." *See attached* Trial Tr., 118. He claims the comment is an "erroneous" statement of the law which would have led the jury to speculate.
> In claims involving trial counsel's decision to object, the Court must determine whether an objection was warranted and whether it would have made a difference in the outcome of the trial. *See State v. Bouchard*, 922 So. 2d 424 (Fla. 2d DCA 2006). In this case, trial counsel had no basis to object. The State made the following statement during closing.
>> Cars can absolutely be a deadly weapon, because if someone goes underneath the tires, what's going to happen to them? They -- they might -- they'll break bones. They could die. Luckily, in this case, that didn't happen. But absolutely a car can be used as a deadly weapon. And, Your Honor -- and, members of the jury, the defendant absolutely touched Deputy Miller against his will.
>
> Trial Tr., 118:5-13. There was no improper statement to object and there is no evidence that a different outcome would have occurred.

(Doc. 7-1 at 449–50). Petitioner appealed and the Fifth DCA affirmed the denial of this ground. (Doc. 7-1 at 468–69).

9

### 3. Failure to object to opinion testimony from the victim

Next, in Subclaim C, the Defendant alleges his trial counsel was ineffective for eliciting improper and inadmissible testimony. He claims the victim testified he believed the Defendant used his vehicle in a manner likely to cause death or great bodily harm. The Defendant argues the testimony is not admissible.

As noted above the Defendant was charged with aggravated battery with a deadly weapon and the weapon was his vehicle. At trial, the victim, Deputy David Miller testified,

> [the Defendant] slapped my hand away as I was reaching for the keys, at which time he was able to start the truck. I noticed that it was a manual transmission truck, so, again, I reached up to get the keys out, which I'm unable to do at that time because the vehicle started. And, at that time, I feel the door pillar or doorjamb where the door closes -- that part hits me in my side. So now I'm in the vehicle and then all of a sudden -- I feel myself hopping along with the vehicle.
>
> So, at this time, I'm going from law enforcement -- I've got to detain a wanted subject, to kind of survival mode, like, I've got to get out of this vehicle before either, A, I get ran over or, B, I get drug with this vehicle. So, at that time, I either pushed off of his arm or his shoulder area to free myself, because, basically, what it was, my vest had gotten caught. It was either caught on him or on the doorjamb. It was caught on something at that time where I couldn't just slide out of the vehicle. I had to physically push myself and, like, unhook whatever was stuck to push myself out of the vehicle.

*See attached* Trial Tr., 39–40.

On cross examination, Deputy Miller testified he was not in front of the vehicle and he did not get hurt. *Id.* at 60. He did testify the vehicle "hit" him, but his vest got "stuck" in the vehicle. *Id.* at 60. Later, Deputy Miller confirmed that the Defendant used the vehicle in a manner likely to cause death or great bodily harm. *Id.* at 61. Contrary to the Defendant's assertions a witness may comment/testify as to their opinions about the Defendant's guilt. It is the role of the jury to determine whether it is credible. Deputy Miller's statements are admissible. Thus, trial counsel was not deficient in cross-examining the victim.

(Doc. 7-1 at 450–51). Petitioner appealed and the Fifth DCA affirmed the denial of this ground. (Doc. 7-1 at 468–69).

The trial court's decisions were not contrary to, or an unreasonable application of, clearly established law. First, the court identified *Strickland* as the ineffective assistance of counsel standard. (Doc. 7-1 at 447). Moreover, the state court analyzed Petitioner's claims to determine whether he suffered any prejudice due to his counsel's actions. (*Id.* at 447–51). Thus, the state court correctly identified *Strickland* as the controlling law and properly applied it to Petitioner's ineffective assistance of counsel claims. *See Robinson v. Moore*, 300 F.3d 1320, 1343 (11th Cir. 2002) (holding that, "[i]t is well established that the Supreme Court's decision in *Strickland* is the controlling legal authority to be applied to ineffective assistance of counsel claims") (quotation omitted). Finally, because Petitioner offers no evidence that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented," he has not met his burden of proving by clear and convincing evidence that the state court's factual findings were incorrect. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

Further, to the extent Petitioner argues that the cumulative effect of counsel's errors "resulted in conviction for aggravated battery that otherwise could not have been obtained." (Doc. 1 at 6). He raised this claim in his postconviction motion. (Doc. 7-1 at 436–37). The postconviction court denied the claim and the Fifth DCA affirmed. (Doc. 7-1 at 451, 468–69).

Here, Petitioner has not established prejudice as to any individual claim or the collective effect of any deficient performance on the trial. *See Morris v. Sec'y, Dep't of*

11

*Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative error since "none of [petitioner's] individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"). In all events, absent Supreme Court precedent applying the cumulative error doctrine to ineffective assistance of counsel claims, the state court's denial of the claim was not contrary to, or an unreasonable application of, clearly established federal law. *See Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009). Accordingly, Ground 1 is denied under § 2254(d).

**B.    Ground Two**

Petitioner states that trial counsel was ineffective for "fail[ing] to argue at judgment of acquittal that the State failed to prove any conduct that could reasonably be viewed as a threat as it relates to Count 2, aggravated assault." (Doc. 1 at 7–8). In his postconviction motion, Petitioner alleged trial counsel's motion for acquittal was insufficient. (Doc. 7-1 at 438–39). He claimed counsel should have argued that because the State's evidence failed to establish he made a credible threat to the officer he could not be convicted of aggravated assault of a law enforcement officer. *Id*. Thus, he argued, the State failed to prove all of the elements of the charged crime. The postconviction court summarily denied relief, concluding that Petitioner could not show deficient performance or prejudice:

> In Ground Two, the Defendant alleges his trial counsel was ineffective for failing to adequately argue the judgment of acquittal as to Count II. He claims trial counsel failed to argue that the State did not prove that his conduct would be viewed as a threat within the meaning of aggravated assault.
> The Defendant was charged with Aggravated Assault of Law Enforcement Officer under section 784.021(1)(a) and 784.07, Florida

12

> Statutes. See attached Amended Information. The State alleged the Defendant threatened the victim using a deadly weapon, his motor vehicle. *Id*. Although trial counsel made no specific arguments about Count II, the Defendant cannot show prejudice. Prejudice is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The movant must show something more than a possibility "that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.
>
> Here, the Defendant claims if trial counsel pointed out that the conduct "could be reasonably viewed as a threat" he would have prevailed. Assault is defined as an "intentional, unlawful threat by unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." § 784.011(1), Fla. Stat. (2018). Aggravated assault requires the use of a "deadly weapon without intent to kill." § 784.021(l)(a), Fla. Stat. (2018). The evidence against the Defendant included the victim, testifying as to his fear while being pulled by the Defendant's vehicle. *See attached* Trial Tr., 58. The Defendant's suggested arguments would not have changed the outcome.

(Doc. 7-1 at 451–52).

The state court's denial of this ground is not contrary to, nor an unreasonable application of, *Strickland*. The evidence established that while the victim's vest was caught on Petitioner's vehicle he was dragged and he was afraid that he would be run over or dragged further. (Doc. 7-1 at 61–62). The failure to present a losing argument does not raise to the level of ineffective assistance of counsel. Accordingly, Ground Two will be denied under § 2254(d).

**C. Ground Three**

Petitioner states that trial counsel was ineffective for failing "to object to jury instructions on use of non-deadly force: where Defendant was charged w/ Aggravated

13

Battery by using a deadly weapon. Alternatively, failure to request instruction on use of deadly force." (Doc. 1 at 9). Petitioner claims that counsel's request for the jury instruction on non-deadly force was prejudicial error. *Id*. The postconviction court rejected this claim during the evidentiary hearing:

> I've heard the testimony of Mr. Lizanich and Ms. Falardeau, recognized as expert witnesses in the field of criminal law, for this -- for this hearing. I've heard no testimony from you because it's, really, solely limited to the legality of what was done at the time of the trial.
> There's really no records that are available to conclusively review. So that's why we had to have a hearing. We've had the hearing.
> I don't find anything deficient in Mr. Lizanich's or Ms. Falardeau's approach to that issue. It's not supported. I understand about the Scintilla Rule and -- and, you know, if there's any argument at all, that's -- that's as specious as saying, well, if my argument has a vowel in it, that means that you should grant the motion because there's a scintilla of evidence. There was none. There was zero. There was nothing.
> And, as such, I still went, as the -- Ms. Falardeau pointed out, in an abundance of caution, I gave the instructions on the non-deadly force, which I didn't even have to, but I did anyway.
> So I find there is conclusively, now, no support at all for that ineffective assistance of counsel claim that was raised in your pleadings. I know Mr. Dozier's kind of soft-pedaling that, saying, I'm really not saying they did anything wrong; you, Judge, you're the one who messed it up because you didn't give both -- both orders.
> I didn't need to give -- I didn't even need to give the one I did give.
> So it's for those reasons and the other reasons expressed by the testimony of the witnesses that your motion stands denied.

(Doc. 7-1 at 504–06). The postconviction court summarized the ruling in a written order:

> … The attorneys that represented the defendant at trial knew, and argued, the Defendant was entitled to jury instructions on both justifiable use of deadly and non-deadly force. They attempted to make their arguments, but due to something completely out of their control, the argument was stopped.

> The Defendant's only claim was ineffective assistance of counsel, which clearly was not proven based on the testimony and evidence presented at the hearing. The Defendant has failed to meet his burden.

(Doc. 7-1 at 511–12).

The state court's denial of this ground is not contrary to, nor an unreasonable application of, *Strickland*. The testimony at the evidentiary hearing established that counsel knew Petitioner was entitled to and requested jury instructions on both justifiable use of deadly and nondeadly force, but that argument was rejected by the trial court. Accordingly, Ground Three will be denied under § 2254(d).

## IV.   CONCLUSION

Accordingly, the Petition (Doc. 1) is **DENIED**. The Clerk will enter judgment for Respondents and against Petitioner and close this case. The Court denies a certificate of appealability, as Petitioner has not made a substantial showing of a denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Because Petitioner is not entitled to such a certificate, the Court will not grant *in forma pauperis* status for an appeal.

**DONE AND ORDERED** at Tampa, Florida, on December 19, 2024.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**Copies furnished to**:
Pro Se Party
Counsel of Record

15